STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN
TERRA INGRAM, DEFENDANT-APPELLANT.

Argued December 11, 1984—Decided March 13, 1985.

*Mark D. Sperber*, Assistant Deputy Public Defender, argued the cause for appellant (*Joseph H. Rodriguez*, Public Defender, attorney).

*Richard W. Berg*, Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Katherine Graham*, Deputy Attorney General, of counsel; *Katherine Graham* and *Catherine A. Foddai*, Deputy Attorneys General, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This appeal questions the constitutionality of the statutory presumption of *N.J.S.A.* 2C:39-2 that an accused weapons offender shall be presumed not to possess the requisite license or permit "until he establishes the contrary."

An officer of the Atlantic City Police Department on car patrol on December 23, 1981 received a dispatch over the radio that there was an assault taking place in the area of his patrol. Responding to the report, the officer soon observed an individual fitting the description of the assailant near the report site. The officer stopped his car, opened the door, and shouted to the individual whom he later identified as the defendant. The defendant fled. The officer then turned loose his police patrol dog to run down the defendant. The officer pursued the defendant on foot. After a short pursuit, defendant began to turn and raise his hand in the direction of the overtaking officer. The officer dove to the ground. The dog bit the

defendant on the left arm and, in so doing, dislodged what appeared to be a gun from defendant's left hand. The struggle among dog, suspect, and arresting officer continued until the defendant surrendered. After assistance came and the defendant was handcuffed, the police recovered the weapon. It was a loaded .22 automatic revolver, in firing position with cocked hammer.

A jury found defendant guilty of possessing a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b; possessing the handgun for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4a; and two counts of aggravated assault. He was sentenced to a custodial term of eight years, with three years of parole ineligibility, on the charge of possession of the weapon for unlawful purposes. He received concurrent terms on the three remaining counts. Defendant raised various points on appeal to the Appellate Division. We have limited our grant of certification to defendant's argument that the State failed to meet its burden of proof as to the possession of a handgun without a permit. The State offered no direct evidence on the permit issue, choosing to rely on the statutory presumption of *N.J.S.A.* 2C:39–2b. In an unreported opinion, the Appellate Division affirmed on that issue as well as the other issues. We granted defendant's petition for certification to consider the issue of the statutory presumption. 97 *N.J.* 605 (1984).

## I.

The threshold question is whether the absence of a permit is an essential element of the offense of unlawful possession of a handgun under *N.J.S.A.* 2C:39–5b or rather is an affirmative defense that the defendant must establish. The Code defines the offense thus:

> [a]ny person who knowingly has in his possession any handgun * * * without first having obtained a permit to carry the same as provided in section 2C:58-4, is guilty of a crime of the third degree. [*N.J.S.A.* 2C:39-5b.]

The State contends that the possession of the required permit is not an element of the offense, but instead is an affirmative

defense that the defendant has the burden of establishing. We disagree. The Code's definitions of "element of an offense" and "affirmative defenses" do not sustain the State's argument.

The Code states that "[n]o person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt." *N.J.S.A.* 2C:1–13a. Each "[e]lement of an offense" is defined as "such conduct or * * * attendant circumstances * * * as [i]s included in the description of the forbidden conduct in the definition of the offense," *N.J.S.A.* 2C:1–14h(a), or "[n]egatives an excuse or justification for such conduct." *N.J.S.A.* 2C:1–14h(c). The circumstance of being without the necessary permit most closely fits the descriptions in subsections (a) and (c) in that the circumstance is included within the description of the offense and serves to negative a justification for the offense. Conversely, a defense is "affirmative" within the meaning of the Code when "(1) [i]t arises under a section of the code which so provides; or (2) [i]t relates to an offense defined by a statute other than the code and such statute so provides." *N.J.S.A.* 2C:1–13c. No section of the Code or other statute makes the issue of a weapons permit a matter of affirmative defense. *See N.J.S.A.* 2C:2–1 to –12, e.g., ignorance or mistake; intoxication; duress; consent; entrapment. Only "[w]hen the application of the code depends upon the finding of a fact *which is not an element of an offense* " does the Code allocate burdens in accordance with the interest to be furthered. *N.J.S.A.* 2C:1–13d (emphasis supplied).

This interpretation of the elements of the offense of carrying a handgun without a permit is consistent with prior law and would advance the desired "continuation of such laws." *N.J. S.A.* 2C:1–1e. Prior law prohibited the carrying of a revolver in an automobile without "first having obtained a permit." *L.* 1968, *c.* 307. In *State v. Hock,* 54 *N.J.* 526 (1969), *cert.* den., 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970), the Court held that "[t]he clause which exempts from its penal provision those persons who have been licensed is so incorporated into

and made a part of the description of the offense that doubtless it should be considered necessary to allege in the indictment * * *.'" *Id.* at 536. Since the "allegation presents a negative which, under earlier cases, the prosecution was not called upon to prove in the first instance," *id.*, the Court imposed upon the defendants "a duty of going forward with some evidence of the holding of a permit." *Id.* at 537. "However, this did not alter the basic rule that the ultimate burden of persuasion rested on the State." *Id.*

While there is some ambivalence in the *Hock* resolution, we believe that it is better to view the absence of a permit as an essential element of the offense. As noted, this would more closely conform to the Code's definitions of the elements of the offense and the Code's definition of the affirmative defenses imposed upon defendants. Jurisdictions have differed as to whether their gun codes impose upon the accused the duty to demonstrate possession of the necessary permit but generally, such decisions have been based upon the specific language in their criminal laws. *See, e.g., State v. Tinsley,* 181 *Conn.* 388, 435 *A.*2d 1002 (1980), *cert.* den., 449 *U.S.* 1086, 101 *S.Ct.* 874, 66 *L.Ed.*2d 811 (1981) (permit an element of offense); *State v. Robarge,* 450 *So.*2d 855 (Fla.1984) (permit an element of offense, thus burden of persuasion on prosecution); *Commonwealth v. Jones,* 372 *Mass.* 403, 361 *N.E.*2d 1308 (1977) (permit not an element of offense since other general law requires holder of required permit to demonstrate lawful authority for conduct); *People v. Henderson,* 391 *Mich.* 612, 218 *N.W.*2d 2 (1974) (permit not an element of the offense); *Commonwealth v. Bigelow,* 484 *Pa.* 476, 399 *A.*2d 392 (1979) (permit an element of offense everywhere in state except on public streets or public property in Philadelphia); *State v. Neary,* 122 *R.I.* 506, 409 *A.*2d 551 (1979) (permit an element of the offense but harmless error here to treat issue as matter of affirmative defense). Based upon the definition of the offense in our Code as well as the Code's definition of "elements of an offense" and "affirmative defense," we hold that the absence of a permit is

an essential element of the offense, and thus, one to be determined by the jury.[1]

## II.

We turn next to the question whether the State may rely upon the statutory presumption of *N.J.S.A.* 2C:39–2 to establish the essential element of the absence of a required permit. Presumptions vary in form, and there is disagreement as to precisely how they operate. *See* Schmolesky, *"County Court of Ulster County v. Allen* and *Sandstrom v. Montana:* The Supreme Court Lends an Ear But Turns Its Face," 33 *Rutgers L.Rev.* 261 (1981); Ashford & Risinger, "Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview," 79 *Yale L.J.* 165 (1969); Note, *"Tot v. United States:* Constitutional Restrictions on Statutory Presumptions," 56 *Harv.L.Rev.* 1324 (1943). Generally speaking, a presumption is an evidentiary device that enables "the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *Ulster County Court v. Allen,* 442 *U.S.* 140, 156, 99 *S.Ct.* 2213, 2224, 60 *L.Ed.*2d 777, 791 (1979). The use of a presumption in a particular criminal

---

[1] We do not doubt that the Legislature could make the mere possession of a handgun an offense without more. It could make the issue of a permit a matter of affirmative defense. *See State v. Rockholt,* 96 *N.J.* 570 (1984) (entrapment may be made a matter of affirmative defense with the burden of proof on defendant). With narrow exceptions for military and police, our Gun Control Law, *L.* 1966, *c.* 60 (now *N.J.S.A.* 2C:39–1 to –12), has made mere possession of certain weapons, such as sawed-off shotguns, dum-dum bullets and silencers, an offense. *N.J.S.A.* 2C:39–3. Other weapons such as pistols and rifles are subject to a careful grid of regulation. They may be possessed by certain persons under defined circumstances, *e.g.,* court attendants or guards "while in the actual performance" of duty, *N.J.S.A.* 2C:39–6c(4) and (5); shopkeepers at a "place of business," *N.J.S.A.* 2C:39–6e; and they may be carried by members of rifle and pistol clubs "to or from a place of target practice," *N.J.S.A.* 2C:39–6f(1). *See State v. Hatch,* 64 *N.J.* 179 (1973) (Massachusetts resident with valid Massachusetts permit subject to New Jersey regulation of manner of carrying a firearm when present in the State).

case must conform to several requirements that have been established to ensure that the burden always remains upon the prosecution to prove every element of the crime charged beyond a reasonable doubt. *Id.*

The Code is cautious in directing the application of presumptions. It provides that "[w]hen the code or other statute defining an offense establishes a presumption with respect to any fact which is an element of an offense, it has the meaning accorded it by the law of evidence." *N.J.S.A.* 2C:1–13e. Evidence Rule 15, adopted September 15, 1981, effective July 1, 1982, specifically declined to state the meaning to be accorded statutory presumptions in criminal cases. The comment to the rule states that the resolution is "a temporary one, to remain effective only until a more comprehensive formulation can be drafted which 'would specifically and substantively deal with presumptions in criminal cases as to matters of definition, effect and operation.'" *Evid.R.* 15 comment. The "law of evidence" in this context will be found in the judicial authority dealing with criminal presumptions.

"The establishment of presumptions favorable to the government in criminal and *quasi*-criminal cases raises delicate issues of due process under the Fifth and Fourteenth Amendments." *Doe v. City of Trenton*, 143 *N.J.Super.* 128, 131 (App.Div.1976), aff'd 75 *N.J.* 137 (1977). This case does not test the outer limits of such delicacy. In general, inquiry as to whether a particular presumption meets constitutional requirements has focused on the degree to which the presumed fact tends, in reality, to flow from the established fact. In *Tot v. United States*, 319 *U.S.* 463, 63 *S.Ct.* 1241, 87 *L.Ed.* 1519 (1943), that standard was stated as follows:

> [A] statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. [*Id.* at 467–468, 63 *S.Ct.* at 1245, 87 *L.Ed.* at 1524.]

That Court also spoke in terms of "the normal balance of probability." *Id.* at 469, 63 S.Ct. at 1246, 87 *L.Ed.* at 1525. While in New Jersey we have employed a similar standard, *State v. Salerno,* 27 *N.J.* 289, 295–96 (1958) ("[I]n a criminal case * * * the Legislature may provide that proof of one fact shall be *prima facie* evidence of another if there is a rational connection in common experience."), we have tended to focus upon the jury function as the central issue. In criminal cases, "[t]he ultimate test of any [presumptive] device's constitutional validity remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *State v. Ingenito,* 87 *N.J.* 204, 220 (1981) (citing *Ulster County Court v. Allen,* 442 *U.S.* 140, 156, 99 *S.Ct.* 2213, 2224, 60 *L.Ed.*2d 777, 791 (1979)).

Thus, in *State v. Humphreys,* 54 *N.J.* 406, 415 (1969), the Court set aside a conviction of possession of stolen goods because the instruction to the jury as to "presumptive evidence" may have misled the jury into believing that it was bound to find the defendant guilty. Conversely, in *State v. DiRienzo,* 53 *N.J.* 360, 376 (1969), the Court upheld a conviction for receiving stolen goods without direct proof of guilty knowledge because the statute simply allowed that element to be inferred from the fact of recent possession of stolen goods.

While drawing this fine line between presumptions and inferences may seem disingenuous, it springs from a recognition "that the jury right includes certain intangible—but very real—benefits to a defendant that are lost if a jury is induced to think in terms of guilt, instead of presumed innocence, before its deliberations have begun." *State v. Ingenito, supra,* 87 *N.J.* at 216; *see also Sandstrom v. Montana,* 442 *U.S.* 510, 99 *S.Ct.* 2450, 61 *L.Ed.*2d 39 (1979) (jury charge that might conceivably have been interpreted as a conclusive presumption as to an element of the offense was deemed to violate constitutional principles of due process). In sum, the validity of a statutory

presumption with respect to a criminal offense rests upon two basic criteria: "[t]he first is simply that there must be a rational connection in terms of logical probability between the proved fact and the presumed fact. The second is that the presumption may not be accorded mandatory effect." *State v. McCandless*, 190 *N.J.Super.* 75, 79 (App.Div.) certif. den., 95 *N.J.* 210 (1983).

Thus, "the meaning accorded * * * by the law of evidence," *N.J.S.A.* 2C:1–13e, to the statutory presumption of *N.J.S.A.* 2C:39–2 is that a jury may be permitted to infer, until the defendant comes forward with some evidence to the contrary, that the defendant does not possess the required license or permit to carry a dangerous weapon. Permitting the jury to make such an inference does not offend our notions of due process. Defendant has relied upon the premise that there is no rational connection between the basic facts and the ultimate facts presumed. We disagree with that premise and therefore, its conclusion.

In passing upon a comparable issue, Justice Braucher of the Supreme Judicial Court of Massachusetts observed:

> In sum, we think G.L. c. 278, § 7 [requiring offenders to establish the existence of a permit to carry on certain prescribed activities], as applied to a license to carry a firearm, satisfies due process requirements. The defendant did not make any suggestion that he had a license. We find it nearly impossible to believe that he had such a license but withheld it, subjecting himself to the risk of a mandatory term of imprisonment. If he did so, for example, for the purpose of establishing a legal principle, the words of the Supreme Court in *Williams v. Florida*, 399 *U.S.* 78, 82, 90 *S.Ct.* 1893, 1896, 26 *L.Ed.*2d 446 (1970), are apposite: "The adversary system of trial is hardly an end in itself * * *." Such an absurd game does not contribute to a search for truth; instead, it increases the risk of convicting the innocent and acquitting the guilty. We find no unfairness in our traditional rule. [*Commonwealth v. Jones, supra*, 372 *Mass.* at 409, 361 *N.E.*2d at 1312–13.]

We are equally convinced that defendants would not play such an absurd game in New Jersey. New Jersey's Gun Control Law is directed against the prevalence of unlawful possession of firearms. The Legislature regards this problem as one that has long since reached crisis proportions. *See State*

*v. Des Marets*, 92 *N.J.* 62, 72–74 (1983). This particular provision dealing with handguns is part of a more comprehensive regulatory program set forth in chapter 39 of the Code of Criminal Justice that deals with the possession of destructive devices, explosives, firearms, firearm silencers, machine guns, rifles, shotguns, sawed-off shotguns and other similar weapons.

We should give considerable deference to the legislative determination that in this field the inference is rational. *See United States v. Gainey*, 380 *U.S.* 63, 66–67, 85 *S.Ct.* 754, 757–58, 13 *L.Ed.*2d 658, 662 (1965). There is no testimonial risk that a defendant would incur. If production of a permit before a jury would undercut a defense of no possession, that issue can be resolved by the court outside the presence of the jury. Almost invariably these regulatory offenses are not at the ·center stage of the trial. The permit is issued in written form. *N.J.S.A.* 2C:58–4. The current form of the permit required under *N.J.A.C.* 13:54–2.2 states that the owner must be in possession of the permit when carrying the handgun. There is nothing irrational about inferring that it would be produced if in fact it existed.

### III.

Ordinarily, final concern will focus on the specific instructions that are given to the jury. Central to the validity of a statutory presumption is the way that the matter is presented to the jury. *See Sandstrom v. Montana, supra,* 442 *U.S.* 510, 99 *S.Ct.* 2450, 61 *L.Ed.*2d 39; *State v. Humphreys, supra,* 54 *N.J.* 406. In *State v. Stasio*, 78 *N.J.* 467 (1979), we re-emphasized that where statutory presumptions are involved, "[t]he jury should be instructed in terms of inferences which may or may not be drawn from a fact, the jury being at liberty to find the ultimate fact one way or the other." *Id.* at 485. Defendant's appeal focused on whether the absence of a permit was an essential element of the offense as well as upon the constitutionality of invoking the statutory presumption of *N.J.*

*S.A.* 2C:39–2 in aid of the State's proof of the essential elements of the offense. Defendant did not specifically object, at trial or on appeal, to the manner in which the trial court instructed the jury to apply the statute.

■ In sum, we hold that (1) the absence of a required permit is an essential element of a weapons offense as defined under *N.J.S.A.* 2C:39–5; (2) once possession of a weapon is shown and an accused fails to come forward with evidence of a permit, the State may employ the statutory presumption of *N.J.S.A.* 2C:39–2 to establish the absence of the required permit; and (3) a jury should be instructed that although such a statute authorizes the inference that there is no such permit, the ultimate burden of persuasion rests on the State, with the jury being at liberty to find the ultimate fact one way or the other.

■ Defendant chose to rest the challenge to his conviction on the constitutionality of the presumption, contending that the State has the affirmative burden to offer evidence on the issue of the permit. We have determined that issue against him.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For reversal*—None.