203 N.J. Super. 216 (1985)
496 A.2d 707
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RONALD JOSEPH HARMON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1985.
Decided June 20, 1985.
*218 Before Judges MICHELS and BAIME.
Peter B. Meadow argued the cause for appellant (Thomas S. Smith, Acting Public Defender of New Jersey, attorney; Peter B. Meadow, of counsel and on the brief).
Marijean Raffetto Stevens, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Marijean Raffetto Stevens, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents difficult questions of first impression pertaining to the construction of N.J.S.A. 2C:39-4 a. At issue is whether the justification of self-defense may serve to exonerate a person charged with possession of a firearm for an unlawful purpose. We hold that the defense is applicable under appropriate circumstances where the accused reasonably perceives himself to be in imminent danger of bodily harm and the display or use of the weapon is immediately necessary for self-protection. We stress, however, that the danger of impending attack must be both immediate and imminent. One *219 may not arm himself with a weapon based upon his anticipation of a future need to use it in self-protection. Based upon these principles, we conclude that the trial judge did not commit plain error in failing to charge the jury with respect to the principles of self-defense.
Defendant was charged in a multi-count indictment with possession of a handgun without a permit (N.J.S.A. 2C:39-5 b), possession of a firearm with a purpose to use it unlawfully against the person of another (N.J.S.A. 2C:39-4 a) and aggravated assault (N.J.S.A. 2C:12-1 b(4)). Following a jury trial, defendant was convicted of both weapons offenses. However, the jury found defendant not guilty of aggravated assault. After a hearing, the trial judge concluded that defendant fell within the purview of the Graves Act (N.J.S.A. 2C:43-6 c). Defendant was sentenced to a custodial term of five years with respect to the conviction for possession of a firearm for an unlawful purpose. The court ordered that defendant be disqualified from parole eligibility for a period of three years. A concurrent term of three years was imposed with respect to defendant's conviction for possession of a handgun without a permit. The trial judge recommended that both sentences be served at the Youth Correctional Institution. Additionally, defendant was assessed penalties totaling $50 payable to the Violent Crimes Compensation Board.
A brief recitation of the facts is necessary for a complete understanding of the questions presented. It is undisputed that defendant pointed an "air-powered BB pistol" at Mario Monticello. The principal issue at trial pertained to the circumstances surrounding the incident. Monticello testified that he was working at the boat rental concession in Echo Lake Park when he observed defendant attempting to enter an area prohibited to the public. According to Monticello, he asked defendant to leave at which point an argument ensued. It is uncontradicted that defendant left the scene only to return approximately one-half hour later with three male friends. Monticello testified that defendant resumed taunting him. As the two *220 approached each other, Monticello took off his ring because he expected that a physical altercation would develop. When Monticello and defendant were approximately two feet apart, the latter "reached behind him" and obtained a pistol. Monticello testified that defendant pointed the weapon directly at him and at one point pressed the gun barrel against his head. According to Monticello, defendant threatened to "blow [his] head off." Shortly thereafter, the argument abruptly concluded and Monticello contacted the police.
Defendant's version of the incident differed in certain material respects. According to his testimony, he had arranged to visit several of his friends who were apparently employees at the boat concession. Defendant had been employed at the concession during the past three summers, but was not working there at the time. When defendant arrived, he asked Monticello, whom he had never met before, where his friends were. Monticello replied that they were not scheduled to work that day. Defendant then walked to the side of the boat house and began reading a newspaper. According to defendant, Monticello directed him to leave. Defendant objected because that portion of the boat house area was accessible to the public. Monticello made several menacing comments at which point defendant voluntarily departed.
Defendant testified that he was both "insulted" and "upset" when he reached his automobile which was in the adjacent parking area. Although defendant conceded that he could have left the park or called the police he instead chose to arm himself with a BB gun which he kept in his automobile. Defendant placed the weapon in his rear pocket and then returned to the boat house. Approximately one-half hour had elapsed. According to defendant, he did not intend to fire the gun. Rather, his purpose in arming himself was to frighten Monticello in the event of a further argument. He testified that he carried the gun for self-protection.
*221 In any event, defendant met three of his companions at the boat concession. As they sat on a nearby bench, Monticello approached. Defendant testified that Monticello "pulled a ring off his finger" and threatened to "break every bone in [his] body." At that point, defendant attempted to reach for his gun. As he did so, a broken hinge on the gun's pumping mechanism caught on his pocket. Defendant quickly "put the gun together" and pointed it at Monticello. He denied pressing the barrel of the weapon against Monticello's head. According to defendant, he had never fired the weapon and, thus, did not know whether it was operable. In a statement given to the police after his arrest, however, defendant related that he had used the gun several weeks before the incident. The weapon was never recovered. In that regard, defendant testified that he discarded the gun in the nearby woods when he heard police sirens immediately after the incident.
Prior to instructing the jury, the trial judge asked counsel whether they wished to submit any specific requests. When defense counsel responded in the negative, the court observed that it "did not intend to charge self-defense." Defense counsel agreed. In his instructions, the trial judge advised the jury that a violation of N.J.S.A. 2C:39-4 a required as an essential element proof beyond a reasonable doubt of possession of a firearm "for the purpose of using it unlawfully" against the person of another. No objection was interposed with respect to the court's charge in this regard. During its deliberations, the jury requested clarification as to whether "pointing a gun constitute[s] an unlawful act." After reading the jury's note to counsel, the trial judge stated that it was his intention to repeat his instructions pertaining to the elements of the offense. In the colloquy which followed, both counsel acceded to the court's suggestion that the pointing of a gun constitutes a violation of the law if accompanied by an unlawful purpose. Thereafter, the judge again charged the jury with respect to the elements of the offense. Additionally, the trial judge stated that pointing a weapon at another would contravene the statute if the *222 defendant's purpose in so doing was unlawful. Again, neither party objected to the court's supplemental instructions.

I
It is against this factual backdrop that we consider defendant's present arguments. Defendant contends that the effect of the trial judge's principal charge and supplemental instructions was to direct the jury to return a verdict of guilty. He claims that the justification of self-protection constitutes an affirmative defense to the charge of possession of a firearm for an unlawful purpose and that the trial court committed plain error when it failed to sua sponte advise the jury accordingly.
We agree that under certain circumstances a claim of self-protection can serve as a complete defense to an alleged violation of N.J.S.A. 2C:39-4 a. That section, unlike N.J.S.A. 2C:39-5 b, requires as an essential element that the accused's possession of the firearm must be accompanied by an unlawful purpose to use the weapon against the person or property of another. By its very terms, the statute proscribes possession of a firearm only to the extent that the accused harbored a purpose to use the weapon unlawfully. If the defendant's purpose in possessing the weapon was to use it in a manner justified by the provisions of N.J.S.A. 2C:3-4 a, it cannot fairly be said that the statute has been offended.
N.J.S.A. 2C:3-4 a provides that the "use of force upon or toward another person is justifiable when the actor reasonably believes that [it] is immediately necessary" for his self-protection "on the present occasion." As a general rule, "a person employing protective force may estimate the necessity" of its use "without retreating." N.J.S.A. 2C:3-4 b(3). However, "[t]he use of deadly force is not justifiable ... unless the actor reasonably believes that [it] is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3-4 b(2). Nor is it justifiable if the actor "knows that he can avoid the necessity of using such force with complete safety by retreating. *223 ..." N.J.S.A. 2C:3-4 b(2)(b). Under N.J.S.A. 2C:3-11 b, the term "deadly force" means "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm." The statutory definition states that "[p]urposely firing a firearm in the direction of another person" constitutes deadly force. N.J.S.A. 2C:3-11 b. However, "[a] threat to cause death or serious bodily harm, by the production of a weapon or otherwise" does not "so long as the actor's purpose is limited to creating an apprehension" that such force will be used if necessary. Ibid. Thus, N.J.S.A. 2C:3-4 a permits an individual to display or brandish a firearm or other weapon when the need for self-protection is reasonably perceived and he merely intends to create an apprehension in the aggressor that he will use deadly force if necessary. Moreover, it would appear that our statutes do not require the actor to retreat under such circumstances even though such an opportunity is at hand and is clearly apparent.[1]
This much conceded, we reject defendant's contention that he was justified in possessing a firearm for the purpose of self-defense within the context of the facts presented here. We stress that the right of self-defense "is measured against necessity." State v. Abbott, 36 N.J. 63, 69 (1961). Thus, examination of our cases discloses a limitation on the right to use defensive force to those situations where the danger of unlawful violence to the person is "immediate" or "imminent." See State v. Fair, 45 N.J. 77, 91 (1965) and Brown v. State, 62 N.J.L. 666, 708 (E. & A. 1899), aff'd 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899). See also The New Jersey Penal Code, Vol. II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission, p. 83 (1971). Absent imminent danger of bodily harm, it is better for the assailed to contact *224 the police than to needlessly imperil or threaten the life of another. Cf. State v. Abbott, 36 N.J. 63, 69 (1961). We do not suggest that the law-abiding citizen must surrender to the threats of the lawless. To some, it is undoubtedly perceived that "the manly thing is to hold one's ground, and hence society should not demand what smacks of cowardice." Ibid. In our view, self-help through the use of a dangerous weapon is not the appropriate remedy.[2] Rather, the answer lies in the police and in the demand for fair and efficient law enforcement.
We, thus, conclude that a person may not arm himself in anticipation of a possible future need to use the weapon in self-defense. Such a perilous course would inevitably lead to a self-fulfilling prophecy. We refuse to recognize apprehension of a hypothetical future danger as a permissible basis for one to carry a weapon in contravention of a general statutory prohibition. Brandishing a weapon in anticipation of harm is not possession for purposes of self-protection where the circumstances do not vindicate the action taken. We have no occasion to determine when and under what specific factual circumstances one may legitimately possess a weapon for self-defense. Suffice it to say, we perceive no exigency here which would permit such a course.[3]
*225 We are not alone in setting these narrow and restrictive parameters. Although our research has not disclosed any published New Jersey opinion pertaining to the precise issue, our holding comports with the decisions of an overwhelming number of jurisdictions. In construing similar statutes, the courts have generally recognized a limited right to possess a weapon for the purpose of self-defense. See, e.g., Wilson v. United States, 198 F.2d 299, 300 (D.C. Cir.1952); McBride v. United States, 441 A.2d 644, 648-652 (D.C.App.Ct. 1982); Worthy v. United States, 420 A.2d 1216, 1218 (D.C.App.Ct. 1980); Hines v. United States, 326 A.2d 247, 248-249 (D.C.App.Ct. 1974); Townley v. State, 355 P.2d 420, 440-441 (Okla. App.Ct. 1960). The courts have made it clear, however, that this doctrine is inapplicable where one anticipating harm carries a weapon before the danger actually arises. See, e.g., Cooke v. United States, 275 F.2d 887, 888 (D.C. Cir.1960); Dandridge v. United States, 265 F.2d 349, 350 (D.C. Cir.1959); Mitchell v. United States, 302 A.2d 216, 217-218 (D.C.App.Ct. 1973); Medley v. State, 52 Md. App. 225, 448 A.2d 363, 368-369 (1982); Taylor v. State, 520 S.W.2d 370, 371 (Tenn. App.Ct. 1975); Johnson v. State, 650 S.W.2d 414, 416 (Tex.Cr.App. 1983); Thompson v. State, 452 S.W.2d 467 (Tex.Cr.App. 1970).
Applying these principles here, we are thoroughly convinced that it was not incumbent upon the trial judge to sua sponte *226 instruct the jury with respect to the principles of self-defense. It can hardly be said that the trial court committed plain error in that regard. See State v. Hock, 54 N.J. 526, 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). See also State v. Lewis, 67 N.J. 47, 49 (1975); State v. Melvin, 65 N.J. 1, 18-20 (1974); State v. Macon, 57 N.J. 325, 337-338 (1971). Although defendant claimed that he pointed the gun at Monticello for the purpose of self-protection, it is uncontradicted that he armed himself with that weapon at a time when he was wholly free from the danger of bodily attack. Succinctly stated, defendant clearly possessed the gun long before the danger of harm was imminent and immediate. Under these circumstances, we perceive no sound basis requiring the trial court to charge the jury with respect to the justification of self-protection. Cf. State v. Choice, 98 N.J. 295, 299 (1985).

II
We also reject defendant's contention that the trial judge committed plain error when he failed to instruct the jury pertaining to the operability of the weapon. In State v. Gantt, 195 N.J. Super. 114 (App.Div. 1984),[4] we reviewed the statutory provisions defining firearm and handgun in the context of the imposition of the mandatory terms required by the Graves Act (N.J.S.A. 2C:43-6 c). We concluded that operability need not be proven in order to warrant a mandatory minimum sentence without parole eligibility because the defendant possessed a firearm during the commission of one of the enumerated crimes. State v. Gantt, supra, at 117-119.
Defendant argues that State v. Gantt, supra is distinguishable because we were concerned there with a "real" handgun. In contrast, he notes that the weapon involved in this case was an air-powered pistol. According to his argument, such devices *227 do not have all of the attributes of "real" guns, but may have similar characteristics and dangers. Therefore, he contends that "hand guns," "rifles," "shotguns" and "machine guns" are all specifically defined in N.J.S.A. 2C:39-1 in terms of their design, but less traditional weapons such as "air guns," "spring guns or pistols" are described in terms of their operability. In support of his contention, he points to the following language contained in the statutory definition of firearm:
It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eights of an inch in diameter, with sufficient force to injure a person [N.J.S.A. 2C:39-1f.].
Defendant thus contends that operability constitutes an essential part of the definition of a firearm within the context of less dangerous weapons such as air-powered pistols and spring guns.
We disagree. In our view, the statutory definition refers to a generic class of weapons defined in terms of their design and intended use.[5] The definition does not require proof of present operability. Rather, the weapon must have been originally designed or manufactured to propel a bullet or missile of the dimensions set forth with sufficient force to injure a person. We do not perceive a legislative intent that the weapon actually be operable at the time of the offense. Such a grudging construction of the statute would place an insurmountable burden on the prosecution in cases where the accused disposed of the weapon[6] and would not comport with the clear legislative policy to restrict the possession and use of such articles.
*228 Of course, we recognize that there may be a legitimate dispute as to whether a particular device possessed or retained the characteristics of a firearm. "Conceivably, although having initially possessed such characteristics, it may have lost them through mutilation, destruction or disassembly." State v. Morgan, 121 N.J. Super. 217, 219 (App.Div. 1972). That issue should be resolved as are other questions of fact. Ibid.
Here, we are convinced that no viable question was presented in that regard. Defendant testified that the gun was operated by air pressure. The weapon was further described in his statement. To be sure, there was evidence that the pumping mechanism caught on defendant's pants when he attempted to retrieve it from his pocket. He testified that he put it back together, however. According to the victim, the gun was fully assembled when the barrel was pressed against his head. Also significant is the fact that defense counsel failed to interpose a timely objection or submit a request to charge with respect to the question belatedly perceived on appeal. We are satisfied that under these circumstances no legitimate dispute existed with respect to whether the weapon retained the characteristics of a firearm.

III
Defendant's remaining arguments are clearly without merit and do not require extended discussion. R. 2:11-3(e)(2). We agree with the trial judge's determination that defendant's sentencing fell within the purview of the Graves Act. For the reasons noted previously, we reject defendant's contention that the Act requires proof of operability. In any event, the trial judge expressly determined that the weapon was in fact operable. We discern no valid reason to disturb his finding in that regard. State v. Johnson, 42 N.J. 146, 162 (1964). Equally *229 devoid of merit is defendant's contention that, as applied to him, the mandatory sentencing provisions of the Graves Act constitutes cruel and unusual punishment under the Federal and State constitutions. State v. Muessig, 198 N.J. Super. 197, 201 (App.Div. 1985). See also State v. DesMarets, 92 N.J. 62, 82 (1983). So too, defendant's argument that an air-powered pistol does not constitute a handgun within the contemplation of N.J.S.A. 2C:39-5 b was recently rejected in State v. Mieles, 199 N.J. Super. 29 (App.Div. 1985), certif. den. ___ N.J. ___ (1985). We adhere to that decision.
The only argument presented which requires additional comment pertains to our Supreme Court's opinion in State v. Ingram, 98 N.J. 489 (1985). There, the Court held that:
(1) the absence of a required permit is an essential element of a weapons offense as defined under N.J.S.A. 2C:39-5; (2) once possession of a weapon is shown and an accused fails to come forward with evidence of a permit, the State may employ the statutory presumption of N.J.S.A. 2C:39-2 to establish the absence of the required permit; and (3) a jury should be instructed that although such a statute authorizes the inference that there is no such permit, the ultimate burden of persuasion rests on the State, with the jury being at liberty to find the ultimate fact one way or the other. [98 N.J. at 500].
Concededly, the trial in this case preceded the decision in Ingram and, thus, the court's instructions did not comport with the mandate that the State bears the ultimate burden of proving the failure to obtain a permit to carry a handgun. Any error committed in that regard was clearly harmless in light of defense counsel's candid acknowledgment of his client's guilt with respect to that offense during his summation and out of the presence of the jury. Under these circumstances, the error did not have a "clear capacity to bring about an unjust result." State v. Hock, supra 54 N.J. at 538. See also State v. Harper, 128 N.J. Super. 270, 277 (App.Div. 1974), certif. den. 65 N.J. 574 (1974).
In sum, we have carefully reviewed all of defendant's arguments. We conclude that defendant was fairly convicted and sentenced in accordance with the applicable statutory provisions. *230 Accordingly, we affirm defendant's convictions and the sentences imposed.
NOTES
[1] In general, the Code of Criminal Justice reflects the principles of self-defense enunciated in prior cases. See, e.g., State v. Brown, 46 N.J. 96 (1965); State v. Fair, 45 N.J. 77 (1965); State v. Abbott, 36 N.J. 63 (1961); State v. Hipplewith, 33 N.J. 300 (1960).
[2] We note that N.J.S.A. 2C:39-6 i permits "possession for the purpose of personal self-defense [a] pocket-sized device which contains and releases not more than three-quarters of an ounce of chemical substance not ordinarily capable of lethal use or of inflicting serious bodily injury, but rather ... intended to produce temporary physical discomfort or disability through being vaporized or otherwise dispensed in the air." We also note a permit to carry a handgun can be obtained under certain circumstances. See N.J.S.A. 2C:58-4 c. See also Siccardi v. State, 59 N.J. 545 (1971); Reilly v. State, 59 N.J. 559 (1971); In re Application of "X", 59 N.J. 533 (1971).
[3] Important public policy considerations strongly militate in favor of the conclusion we have reached. Although there is a general statutory prohibition against possession of a handgun without a permit, see N.J.S.A. 2C:39-5 b, there is no similar proscription guarding against possession of other items which can readily be used as weapons. Rather, our Legislature has chosen to regulate the possession of such items depending upon the actor's purpose and the surrounding circumstances. See, e.g., N.J.S.A. 2C:39-3 e (possession of a weapon "without any explainable lawful purpose"); N.J.S.A. 2C:39-4 b (possession of an explosive substance "with a purpose to use it unlawfully"); N.J.S.A. 2C:39-4 c (possession of a destructive device "with a purpose to use it unlawfully"); N.J.S.A. 2C:39-4 d (possession of any other weapon "with a purpose to use it unlawfully"); N.J.S.A. 2C:39-5 d (possession of a weapon "under circumstances not manifestly appropriate for such lawful uses as it may have"). See also State v. Lee, 96 N.J. 156, 162 (1984); State v. Jones, 198 N.J. Super. 553, 564-566 (App.Div. 1985). If one were permitted to arm himself in reasonable apprehension of a future danger without reference to its imminency, it could be argued that there would be no statutory bar to possession of such weapons. Indeed, a cogent argument could be made supporting the thesis that one could arm himself whenever he was in a "high crime" area and, thus, subject to the threat of bodily harm. We cannot ascribe such a purpose to our Legislature.
[4] Certification was granted by our Supreme Court ___ N.J. ___ (1985). The appeal has not yet been argued.
[5] Distinguishable on this basis is State v. Ortiz, 187 N.J. Super. 44, 49-50 (App.Div. 1982) which involved a "fake" or "toy" gun.
[6] Even prior to the adoption of the Code of Criminal Justice, proof of the possession of a real weapon was said to create a "rational inference ... tantamount to legal proof ... that the gun is capable of being fired." State v. Schultheis, 113 N.J. Super. 11, 16 (App.Div. 1971), certif. den. 58 N.J. 390 (1971). See also State v. Cole, 154 N.J. Super. 138, 146-147 (App.Div. 1977), certif. den. 78 N.J. 415 (1978).