707 A.2d 486

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. HUSSAN MOORE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 4, 1998—Decided April 3, 1998.

Before Judges BAIME, WEFING and BRAITHWAITE.

*Paul Halligan,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney; *Mr. Halligan,* brief).

*Gary A. Thomas,* Assistant Prosecutor, argued the cause for respondent (*Patricia Hurt,* Essex County Prosecutor, attorney; *Mr. Thomas,* on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

Following a jury trial, defendant was convicted of aggravated assault, *N.J.S.A.* 2C:12–1b(1), and unlawful possession of a handgun, *N.J.S.A.* 2C:39–5b. He was sentenced to a seven-year custodial term with a three-year parole disqualifier on the aggravated assault conviction, and to a concurrent four-year custodial term on the possession of a handgun conviction. He now appeals and contends:

POINT I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GIVE THE JURY AN INSTRUCTION ON SELF–DEFENSE TO THE CHARGE OF AGGRAVATED ASSAULT AS REQUESTED BY THE DEFENDANT.

A. The Confrontation.

B. The Struggle For The Gun.

POINT II

THE COURT ERRED IN NOT ALLOWING DEFENDANT TO CROSS–EXAMINE THE VICTIM CONCERNING HIS JUVENILE RECORD AND STATE'S WITNESS ARCHIE CROOKS CONCERNING THE NATURE OF THE JUVENILE CHARGES HE WAS FACING.

A. The Court Erred In Precluding The Defense From Cross–Examining The Victim Concerning His Juvenile Record.

B. The Trial Court Erred in Denying Defendant The Right To Cross–Examine State's Witness Archie Crooks About the Nature of the Juvenile Charges Pending Against Him.

POINT III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SPECIFICALLY CHARGE THE JURY ON CAUSATION.

POINT IV

THE TRIAL COURT'S FLIGHT INSTRUCTION WAS INSUFFICIENT BECAUSE IT FAILED TO INFORM THE JURY THAT IF IT ACCEPTED DEFENDANT'S EXPLANATION AS TO WHY HE LEFT THE SCENE OF THE INCIDENT NO ADVERSE INFERENCE AS TO HIS GUILT COULD BE DRAWN.

*POINT V*

THE TRIAL COURT ERRED IN FAILING TO SENTENCE DEFENDANT
TO A MITIGATED TERM OF IMPRISONMENT.

With the exception of point one, our careful review of the record discloses that defendant's points are clearly without merit. *R.* 2:11–3(e)(2). Because, however, the trial judge failed to charge the jury on self-defense, we are constrained to reverse defendant's conviction for aggravated assault and remand for a new trial. We affirm defendant's conviction and sentence for the unlawful possession of a handgun.

I

During trial, differing accounts of the incident unfolded. On July 5, 1995, at approximately 11:20 p.m. the victim, Erv–Wakine Smith, Archie Crooks, Tamara Bush, Shakisa Lawson, and Malcolm Stohall were walking down the middle of Amherst Street in East Orange. As they proceeded down the street, they observed defendant "standing on the corner ... rolling up a blunt" of marijuana. Lawson called defendant "Puff Daddy." Defendant noticed that the victim was staring at him and asked, "What are you looking at?" or, "Is there a problem?"

The victim then walked toward defendant and asked him what he had said. The victim testified that when he was three or four feet in front of defendant, defendant pulled out a gun from his waistband and put the gun to the victim's head. The victim questioned defendant's actions and when defendant cocked the gun and "started squeezing the trigger," the victim grabbed defendant's arm in an attempt to avoid being shot. A struggle ensued and the victim attempted to run away. "As [he] pushed off and went to run, [defendant] pulled the trigger." The victim was shot in his lower abdomen.

Defendant's account of the incident was different. He agreed that he was in the area "rolling a blunt," of marijuana, when he heard the voices of the victim and his companions. He testified that he looked up and noticed that the victim was staring at him.

He asked the victim if "there was a problem" and the victim and another member of the group "began charging" him. He said that he was afraid "that they might try to jump" him. He further reiterated that the two were "rushing [him] at the time" and that "they [were] going" to "attack."

As a result, defendant pulled out a gun and "waved it around," intending to cause the two to "back off." The victim grabbed the gun and a struggle ensued. During the struggle the gun discharged and a bullet struck the victim. Defendant was aware that the victim was shot, however, he ran from the scene. He testified that he never put the gun to the victim's head and that he pulled out the gun to scare the victim. He said he never intended to shoot anyone. After the shooting, defendant took the gun to a junkyard located in Newark and watched as the gun was melted down with a welding torch.

## II

■ Here, defendant's request for a charge on self defense was denied by the trial judge. The judge concluded that there was no evidence to support a self-defense charge and further that defendant's theory of the case was that the shooting was an accident. We first observe that the defenses of accident and self-defense are not mutually exclusive. There is "no inconsistency between a defense of self-defense and a defense of accidentally wounding the particular victim." *State v. Giberson,* 153 *N.J.Super.* 241, 246, 379 *A.*2d 480 (App.Div.1977).

■ Having determined that the two defenses are not inconsistent, however, does not alone justify a charge of self-defense. In *State v. Burks,* 208 *N.J.Super.* 595, 506 *A.*2d 779 (App.Div.1986), we summarized the elements of self-defense as follows:

> *N.J.S.A.* 2C:3–4a provides that the "use of force upon or toward another person is justifiable when the actor reasonably believes that [it] is immediately necessary" for his self-protection "on the present occasion." As a general rule, "a person employing protective force may estimate the necessity" of its use "without retreating." *N.J.S.A.* 2C:3–4b(3). However, "[t]he use of deadly force is not justifiable ... unless the actor reasonably believes that [it] is necessary to protect himself

against death or serious bodily harm." *N.J.S.A.* 2C:3–4b(2). Nor is it justifiable if the actor "knows that he can avoid the necessity of using such force with complete safety by retreating...." *N.J.S.A.* 2C:3–4b(2)(b). Under *N.J.S.A.* 2C:3–11b, the term "deadly force" means "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm."

> [*Id.* at 604, 506 *A.2d* 779 (citations omitted) (alterations in original.)]

"[T]he right of self-defense 'is measured against necessity.'" *State v. Harmon*, 203 *N.J.Super.* 216, 223, 496 *A.2d* 707 (App.Div. 1985) (citation omitted), *rev'd on other grounds*, 104 *N.J.* 189, 516 *A.2d* 1047 (1986).

The trial judge must charge the jury on self-defense "if any evidence raising the issue is adduced, either in the State's or the defendant's case...." *State v. Kelly*, 97 *N.J.* 178, 200, 478 *A.2d* 364 (1984). *See State v. Bryant*, 288 *N.J.Super.* 27, 35, 671 *A.2d* 1058 (App.Div.), *certif. denied*, 144 *N.J.* 589, 677 *A.2d* 761 (1996). Further, once evidence "of self-defense is adduced, ... then the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts...." *State v. Kelly, supra*, 97 *N.J.* at 200, 478 *A.2d* 364. Here, we conclude that a rational basis for a charge of self-defense is present in the evidence. During his direct examination defendant testified as follows:

Q: Why did you pull [the gun] out?

A: Because I thought, I didn't know what they was going to do. They was just charging me, charging at me like, you know what I'm saying, like I did something to them when I just asked them a question.

Q: Were you afraid at that time?

A: Yes, a lot of thoughts was running through my mind. I didn't know what was going to go on.

Q: What were you afraid of?

A: I was afraid they might try to jump me or take my weed or something like that.

During cross-examination, in response to the question whether the victim and his companions had attacked defendant, he said: "They was going to, yes." With the above evidence, the trial judge erred in not charging self-defense.

■ We note that when defendant pulled out the gun from his waistband, if his testimony is believed, his waving of the gun was not a display of deadly force. "A threat to cause death or serious bodily harm, by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force." *N.J.S.A.* 2C:3–11b.

■ The confrontation here that led to the shooting of the victim took place on a public street. There is no evidence that either the victim or his companions were armed with any weapons. Despite the lack of weapons, "our statutes do not require the actor to retreat under such circumstances even though such an opportunity is at hand and is clearly apparent." *State v. Harmon, supra,* 203 *N.J.Super.* at 223, 496 *A.*2d 707 (footnote omitted). Defendant could have retreated, and had he done so, this shooting may not have resulted. The duty to retreat, however, applies only to the use of deadly force. *N.J.S.A.* 2C:3–4b(2)(b). "Thus, *N.J.S.A.* 2C:3–4a permits an individual to display or brandish a firearm or other weapon when the need for self-protection is reasonably perceived and he merely intends to create an apprehension in the aggressor that he will use deadly force if necessary." *State v. Harmon, supra,* 203 *N.J.Super.* at 223, 496 *A.*2d 707.

We question the wisdom of a policy that permits an individual to brandish a handgun on a public street in circumstances such as these when retreat is readily available. This is particularly so when, "the dangers presented by the modern proliferation of handguns in the possession of millions of citizens including, of course, many violent criminals[,]" is well documented. *State in re of H.B.,* 75 *N.J.* 243, 245, 381 *A.*2d 759 (1977). Because of the present state of our law, however, we are constrained to reverse defendant's aggravated assault conviction because there is evidence to support a self-defense instruction. There is evidence here that, although the victim and his companions were unarmed, defendant viewed the display of a handgun as a necessity. *See State v. Abbott,* 36 *N.J.* 63, 69, 174 *A.*2d 881 (1961). Any change in

policy that would prohibit defendant's conduct under these circumstances must come from the Legislature.

### III

In light of our decision, we need not consider the other issues raised by defendant. As we noted, *supra,* the remaining issues lack sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(2).

Defendant's conviction and sentence for aggravated assault are reversed. His conviction and sentence for the unlawful possession of a handgun are affirmed.