**John K. GLICK, Appellant,**

v.

**Don R. ERICKSON, as the Duly Appointed and Acting Warden of the South Dakota State Penitentiary, Appellee.**

No. 73–1413.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1973.

Decided Dec. 11, 1973.

Steve Jorgensen, Sioux Falls, S. D., for appellant.

Walter W. Andre, Asst. Atty. Gen., Pierre, S. D., for appellee.

Before LAY, BRIGHT, and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

John K. Glick here seeks habeas corpus relief from a ten-year sentence for armed robbery imposed upon him by the State of South Dakota in 1971. He claims the police unlawfully searched him and seized a pistol and ammunition which were later introduced in evidence in the state trial. The State Supreme Court affirmed his conviction on direct appeal and denied him relief from the alleged unlawful search and seizure. State v. Glick, 201 N.W.2d 867 (S.D. 1972). The United States District Court quashed his petition for habeas corpus relief. Glick v. Erickson, 356 F.Supp. 535 (S.D.1973). On the record presented here, we find the contentions of Glick to be without merit and we affirm.

The controversy here centers on a "frisk" search of Glick's person made by Detective Eugene Horst of the Sioux Falls, South Dakota, Police Department on November 7, 1970, less than two hours after the occurrence of an armed robbery at a Sioux Falls gasoline service station. The trial record does not disclose a complete explanation of how Detective Horst happened to find Glick at the particular house located at 724

North Mable, Sioux Falls, South Dakota, and thus, on this appeal, Glick contends, the record shows no reasonable basis for the officer's intrusion into the private home nor for conducting the search of his person. Accordingly, Glick urges, the search should be held in violation of his fourth amendment rights and the trial held invalid because this questioned evidence was admitted at the trial in contravention of the exclusionary rule.

Glick's arguments rest on the transcript of the trial which, as has been noted, does not disclose background circumstances to Detective Horst's search and seizure of the revolver and ammunition. The argument as based on the trial transcript has some facial validity since an unexplained police search of a person occupying a private dwelling suggests an arbitrary invasion of personal rights.[1] The trial record, however, discloses that Glick through his attorney never made a motion to suppress the questioned evidence on fourth amendment grounds. Instead he sought initially to exclude them on state statutory grounds, since the officer seizing these items failed to issue Glick a receipt for his property as required by S.D. Compiled Laws Ann. § 23–16–1 (1967). Later, defense counsel tangentially referred to the fourth amendment during the prosecution's case-in-chief in objecting to testimony relating to items discovered and seized from Glick by Detective Horst, stating somewhat indefinitely:

MR. JORGENSEN: I would object to any testimony with regard to what this officer found in any pockets or upon the person of the defendant, him not having been under arrest so it couldn't be incidental to the arrest. No search warrant, no arrest warrant.

The trial court briefly discussed the objection with the attorneys in a proceeding outside the presence of the jury. The prosecutor explained that the same evidence had been introduced at a preliminary hearing without objection, noted that no motion to suppress had been made prior to trial, and suggested that the Supreme Court's approval of "frisk" searches controlled. The trial court overruled the objection to the evidence and proceeded with the trial.

■■ Appellant's counsel in his reply brief explains that his strategy in this post-trial proceeding is geared to take advantage of the prosecution's neglect in' failing to develop testimony at the trial which justified the search. With candor counsel states:

Counsel prior to trial examined the preliminary hearing transcript and interviewed witnesses for the prosecution. Counsel for the Appellant upon his investigation determined that a motion to suppress would not be granted because it was felt that at that time the State could show that probable cause existed for the search * * *.

* * * * * *

* * * Counsel's investigation of the facts of the case led him to the conclusion that the State would have

---

1. In this case, however, it was the objections of defense counsel, which the state trial judge sustained, that restricted the efforts of the prosecution to explain any basis for the search. The trial record discloses the following proceedings during Detective Horst's testimony:

Q Going to the particular house, had you received some report of the robbery that had taken place at the station?

A Yes, I had received a call at my home from Lieutenant Renli first advising me.

. . . . .

MR. JORGENSEN: I object to any conversation this defendant might have had or this witness might have had with Lieutenant Renli as being hearsay.

THE COURT: Sustained.

* * * * *

Q All right, and then what else did you do?

A I also received some other information through the radio room at the Police Department that a subject matching the description . . . .

MR. JORGENSEN: I object to any information he received from the radio room as being hearsay testimony.

THE COURT: Sustained.

no problem establishing probable cause.

This strategem misconceives our function in a habeas proceeding. We do not here act as a court of review for the state trial judge. The jurisdiction of federal courts may be invoked by a state prisoner who is in custody "in violation of the Constitution * * * of the United States * * *." 28 U.S.C. § 2241(c)(3). The record presented to the federal courts on this petition for habeas corpus relief consists of the entire state court file and transcript of the trial. This file includes the proceedings at Glick's state court preliminary hearing.

The full record clearly shows that Detective Horst received a description of the robber which included a description of his clothing and physical features and the fact that he wore a mustache. Shortly after the robbery, a taxicab driver picked up a passenger at a bar located within two blocks of the locus of the crime. The cab driver delivered this fare to the address on Mable Avenue. From the record, one might infer that this information was relayed by the taxi driver or the taxi dispatcher to Sioux Falls police. In any event, based on information he received at the police station, Detective Horst went to 724 Mable Avenue. He knocked at the door of that residence, identified himself, and entered the house with permission. He observed three persons in the kitchen, and again identified himself. The officer testified at the preliminary hearing:

> At this time I looked over at the defendant and at this time I asked him to stand up. He stood up at this time. I noticed he was wearing a mustache and also clothing which matched the description as in the armed robbery which had occurred earlier.

The officer patted Glick's clothing and felt a hard object in the right coat pocket. He reached in the pocket and removed an ammunition clip for a .32 automatic pistol. He patted further and felt another hard object, and, upon pulling Glick's coat back, removed a .32 automatic from his waistband.

■ The essential fact is that this weapons "frisk" was completely proper and justified for Detective Horst's own protection. Horst knew of the commission of an armed robbery. He was engaged in an investigation of the crime, and encountered a person matching the robber's description at a place to which he had been directed. His conduct was eminently reasonable. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ In *Terry*, the Supreme Court articulated the "stop and frisk" doctrine which warrants a police intrusion of an individual's privacy under circumstances where probable cause for an arrest does not exist. Chief Justice Warren wrote of an officer's "pat down" search during the investigation of suspicious behavior:

> * * * We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
>
> In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at

close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. [392 U.S. at 23–24, 88 S.Ct. at 1881.]

Upon examination of the whole record in this case, we find that Glick's petition for relief is utterly without merit.[2] The trial court properly quashed the writ.

Affirmed.

2. We note that appellant's counsel, perhaps inadvertently, misled this court in his brief by citing only the evidence in the trial transcript and claiming that it "constituted all of the material evidentiary facts" on this appeal. This was not true. Important facts were contained in both the transcript of the trial and the transcript of the preliminary hearing. We recognize that appointed counsel may not have realized that federal courts are entitled to examine the entire record in cases of this kind to determine whether a constitutional violation exists and are not limited solely to a review of the record on trial, as was the South Dakota Supreme Court.