MATTHEW NOLAN RUSLING; Appellant, v. THE STATE OF NEVADA, Respondent.

No. 11047

October 8, 1980                                    617 P.2d 1302

*Jeffrey D. Sobel,* Las Vegas, for Appellant.

---

*Richard H. Bryan,* Attorney General, Carson City; and *Robert J. Miller,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, Mowbray, C. J.:

A jury found Matthew Nolan Rusling guilty of possession of a firearm by an ex-felon. NRS 202.360. He was also adjudged an habitual criminal and sentenced to life imprisonment with the possibility of parole, NRS 207.010.

By pretrial motion, appellant unsuccessfully sought to suppress introduction of the firearm into evidence. He now seeks reversal of his judgment of conviction on two grounds: (1) that the introduction of the firearm into evidence violated his fourth amendment right against unreasonable searches and seizures; and (2) that the trial court erred in failing to instruct the jury

that operability of a firearm is a necessary element of the offense charged. We disagree and affirm.

## THE FACTS

While patrolling in his vehicle at approximately eleven in the evening of November 21, 1977, Officer Harber of the Las Vegas Metropolitan Police Department noticed an automobile, with both trunk and driver's side door open, parked in the middle of the travel lane. Officer Harber observed a white adult male leave the parked vehicle and walk across the street to a pickup truck. Protruding from the gas tank of the truck and leading into a metal container on the ground was a rubber hose. After the officer stopped his car, the man turned, saw the officer, and immediately fled down the street. By fixing his spotlight on him, Harber was able to observe that the man was approximately five foot ten inches to six feet tall, had long dark unkempt hair, and wore a brown jacket, levis, and a white T-shirt. Harber ascertained that the license plates on the stopped vehicle were registered to a Matthew Rusling and that the vehicle had been reported stolen.

Officer Scholl, a member of the canine patrol, responded to the scene and was advised of the above facts. Scholl spent the next forty minutes searching the thick underbrush near the area where the suspect was last seen; twice his dog indicated the probable presence of a human being in the thick bushes, but the Officer did not see anyone. Returning to his car, Scholl was joined by Officer Shelton, and the two proceeded to divide the area and continue the search by automobile. Ten to fifteen minutes later Shelton spied a man matching the suspect's description. Shelton stopped the suspect, requested identification, and he identified appellant as the owner of the license plates on the stolen car. During this initial contact, Shelton noted that the suspect continued to move his right hand near and around his right side coat pocket; he warned Rusling to keep his hands away from his pockets. Within two minutes after Shelton stopped Rusling, Scholl responded to Shelton's radio call and arrived at the scene. He saw a white male matching the description supplied by Officer Harber; he also noted that the suspect had grass stains and loose grass on his coat as well as dirt and concrete burns on his hands. Scholl left his vehicle and proceeded to pat down the suspect's outer clothing. Feeling a hard object resembling a gun in the right hand coat pocket, he reached into the pocket and removed an automatic pistol which contained an ammunition clip as well as a live round in the chamber. Appellant was then arrested.

*THE SEARCH*

Even though probable cause may not exist to place a person under arrest, a police officer may, under appropriate circumstances and in a proper manner, approach and detain a person for the purpose of investigating possible criminal behavior. Terry v. Ohio, 392 U.S. 1, 22 (1968); Stuart v. State, 94 Nev. 721, 722, 587 P.2d 33, 34 (1978); Jackson v. State, 90 Nev. 266, 267, 523 P.2d 850, 851 (1974); Wright v. State, 88 Nev. 460, 464, 499 P.2d 1216, 1219 (1972); NRS 171.123(1). Appellant emerged from the area where the police officers had reason to believe the suspect was lurking; he matched the description broadcast by Officer Harber. Officer Shelton was, therefore, justified in approaching appellant and stopping him for the purpose of further investigation.

Appellant suggests that even conceding the legality of the stop, the subsequent patdown by Officer Scholl was illegal. The Terry Court set the standard for warrantless "stop and frisk" search and seizures: "[T]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, *supra,* at 27 (citations omitted). The reasonable basis for the patdown arises from the circumstances surrounding the stop as well as the specific facts of the citizen's reaction. Glick v. Erickson, 488 F.2d 182, 184 (8th Cir. 1973); People v. Casias, 563 P.2d 926, 932 (Colo. 1977).

Officer Scholl had reasonable grounds to anticipate the possibility of danger to himself or Officer Shelton. The suspect met the description of one possibly engaged in auto theft. The man bore evidence of flight and that he had been hiding in the underbrush. The stop occurred late at night, and the license plates on the stolen automobile were registered in appellant's name. All these factors led the officer to conclude reasonably that the suspect was involved in criminal conduct. Therefore, it was not improper for him to infer the possibility of a concealed weapon. *See* People v. McGowan, 370 N.E.2d 537 (Ill. 1977), *cert. denied,* 435 U.S. 975 (1978); People v. Martineau, 523 P.2d 126 (Colo. 1974); Wright v. State, *supra;* People v. Mosher, 461 P.2d 659 (Cal. 1969); NRS 171.1232(1).

Finally, when a police officer reasonably believes from his

initial patdown that a weapon is concealed upon a suspect, the officer may, of course, place his hand within the person's clothing and remove the weapon. Sibron v. New York, 392 U.S. 40, 65 (1968); People v. Casias, *supra,* at 933. Officer Scholl felt an object he reasonably believed to be a gun; placing his hand inside appellant's pocket to remove the firearm was constitutionally permissible. The subsequent arrest of appellant, who had identified himself as an ex-felon, was, therefore, proper. Adams v. Williams, 407 U.S. 143, 148 (1972); NRS 202.360(2).

## THE JURY INSTRUCTION

As to appellant's second contention that the trial court erred in failing to instruct the jury that the operability of the handgun was an essential element of the crime, we find no error. Appellant offered no evidence indicating that the handgun was inoperable. Both officers, Shelton and Scholl, testified the gun appeared operable and that it contained live ammunition. Further, the gun as well as the clip and ammunition were admitted into evidence. It was within the judgment of the jury to conclude that the gun was a firearm within the definition of NRS 202.360. *See* State v. Cartwright, 418 P.2d 822, 830–831 (Ore. 1966), *cert. denied,* 386 U.S. 937 (1967).

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.