THIRD DEPARTMENT, NOVEMBER, 1984

(November 1, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK ALAN SHAFFER, Appellant. — Appeal from a judgment of the County Court of Chemung County (Monroe, J.), rendered June 5, 1981, upon a verdict convicting defendant of the crimes of burglary in the first degree, criminal use of a firearm in the first degree and attempted aggravated assault upon a peace officer.

Sometime after 11:30 P.M. on November 19, 1980, defendant was observed exiting a cellar window in the residence known as 302 Grant Avenue in the City of Elmira by two policemen who were called by the resident, Margaret Symkowski. After a short chase, defendant was apprehended and arrested. He was wearing an empty pistol holster. The police found a .22 caliber five-shot chrome revolver containing four live bullets and one spent casing along the route taken by defendant when he came out of the Symkowski house and ran from the police. He was indicted and tried on three charges, attempted murder, burglary and criminal use of a firearm, all three in the first degree. A jury convicted him of the burglary and firearm charges and of attempted aggravated assault upon a peace officer as a lesser included crime of the charge of attempted murder. He was sentenced to 12 ½ to 25 years on the burglary and criminal use of a firearm charges, and 7½ to 15 years on the attempted aggravated assault charge, all to run concurrently.

On this appeal, defendant first contends that there was insufficient proof upon trial of his possession of a deadly weapon which was a necessary element of all three crimes for which he was convicted. He first argues that the proof of the tests conducted on the ammunition were insufficient as a matter of law to show that the ammunition was "live" (see *People v Little,* 88 AD2d 671; *People v Daniels,* 77 AD2d 745). We disagree. The witness Gerald Inman observed defendant fire one round prior to the burglary and the discharged casing was found in the gun. While the police did not test fire the four bullets found in the gun, microscopic examination of those bullets compared with the single spent casing by an expert demonstrated identical firing pin markings, thus proving that the trigger was pulled on each of the five bullets in the gun. Another ballistics expert testified he was able to fire bullets with the gun by use of single action method of shooting as compared with the double action or automatic process of firing. His expert opinion was that the gun misfired because it was dirty and in poor working order, not because of defective ammunition. Moreover, defendant himself told Inman that, "I pointed the gun at the * * * cop, pulled the trigger four times, and if the gun had worked the cop would have been dead." We find this evidence, taken cumulatively, sufficient to enable the jury to conclude beyond a reasonable doubt that the weapon contained live ammunition and constituted a deadly weapon (Penal Law, § 10.00, subd 12), and in accord with our decision in *People v Daniels (supra),* such proof *beyond a reasonable doubt* is all that is required to support a conviction. This is buttressed by the requirement that the evidence "must [now] be viewed in the light most favorable to the People, since

we must assume from the conviction that the jury credited the People's proof" (*People v Bracey,* 41 NY2d 296, 302; accord *People v Benzinger,* 36 NY2d 29).

We also reject defendant's argument that proof of his possession of a deadly weapon was established solely by circumstantial evidence. To be sufficient, the hypothesis of guilt must be logically consistent with the facts proved and "must exclude 'to a moral certainty' every reasonable hypothesis of innocence" (*People v Benzinger, supra,* p 32; see also, *People v Cleague,* 22 NY2d 363, 365-366). The proof in the record shows that defendant wore a holster and had possession of a chrome plated .22 caliber revolver before he went into the house. The weapon itself was found directly on the path he took as he emerged from the house. These facts, when taken with defendant's admission to Inman that he attempted to fire the weapon at the policeman during his escape from the house, were sufficient to prove possession beyond a reasonable doubt.

Defendant is correct in his contention that attempted aggravated assault is not a lesser included charge of the crime of attempted murder in the first degree.* Upon oral argument, the prosecution very candidly agreed. However, the Court of Appeals has held that "[a]ny error by the trial court in considering or submitting to the jury a lesser crime * * * that is not in fact a lesser included offense, is waived unless defendant makes timely objection" (*People v Ford,* 62 NY2d 275, 279). A defendant waives his right to complain of the trial court's error by acquiescing in or, as in this case, affirmatively requesting the erroneous lesser charge (see *id.,* at p 283).

Finally, we find no abuse of discretion by the court in the maximum sentences imposed upon each conviction, which run concurrently, given defendant's status as a second felony offender.

Judgment affirmed. Kane, Casey and Weiss, JJ., concur.

Mahoney, P. J., and Levine, J., concur in part and dissent in part in the following memorandum by Levine, J. Levine, J. (concurring in part and dissenting in part). The first degree burglary and criminal use of a firearm charges of which defendant stands convicted (Penal Law, § 140.30, subd 1; § 265.09, subd [1]) both require proof that the gun he possessed *at the time*

---

\* At the date of the crime, attempted murder in the first degree required the victim be a police officer (Penal Law, §§ 110.00, 125.27, subd 1, par [a], cl [i]). The lesser included offense charged at defendant's request was attempted aggravated assault upon a peace officer (Penal Law, §§ 110.00, 120.11). On the date of the crime, the statutory definition of peace officer did not include a policeman (CPL 2.10). The Legislature has since amended section 120.11 of the Penal Law to include police officers (L 1981, ch 175, § 3, eff July 2, 1981).

of the entry into the Symkowski residence was a "deadly weapon", i.e., a "loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" (Penal Law, § 10.00, subd 12). Under now well-established precedent, this requires the prosecution to establish not only that the gun was operable, but also that the ammunition it contained was "live" (*People v Little,* 88 AD2d 671; *People v Daniels,* 77 AD2d 745, 746; *People v Thomas,* 70 AD2d 570). The police never resorted to the simple expedient of test firing any of the four bullets found in the weapon's chamber to prove this latter element of both crimes, as repeatedly suggested in the foregoing decisions. The majority, however, holds that there was other evidence establishing that the ammunition was live, consisting of (1) defendant's companion's testimony that defendant previously fired one bullet from the gun before the burglary, (2) markings on the four bullets found in the chamber identified by a ballistics expert as matching the markings on the single spent casing found in the weapon, and (3) defendant's statement to the same companion that he had shot at a policeman unsuccessfully because the gun misfired. In our view, these items, taken either individually or collectively, were not probative of whether the ammunition in the gun at the time of the burglary was capable of causing death or serious physical injury.

That the gun previously discharged a bullet tends to establish that it was operable at the time of the burglary and that it had previously contained one live bullet. Clearly, however, this proves nothing as to the efficacy of the remaining bullets found in the weapon. That the bullets in the gun at the time of the burglary had markings similar to the spent casing found in the weapon is equally unavailing to prove anything about the unspent cartridges. This only tended to establish defendant's unsuccessful attempt to discharge those bullets, a fact more supportive of the inference that those bullets were *not* live than the contrary. Defendant's statement to his companion that he would have shot the policeman in the course of the burglary but for the gun's misfiring proves only that defendant believed that the remaining ammunition was live, and we fail to see how the fact of his belief in this regard supported any inference that his assumption was correct. Accordingly, the evidence was insufficient to prove that the gun contained live ammunition at the time of the burglary, and the convictions for the burglaries and firearm charges should be modified by reducing them to the applicable lesser included crimes of burglary in the second degree (Penal Law, § 140.25, subd 2) and criminal possession of a weapon in the fourth degree (Penal Law, § 265.01, subd [1]).

Regarding defendant's conviction for attempted aggravated assault upon a peace officer, as the majority points out, the evidence established that the intended victim was a police officer and not a peace officer. Therefore, by reason of the statutory anomaly existing at the time, defendant was actually convicted of a crime he did not commit. This distinguishes the instant case from the authority cited by the majority on this issue, wherein the defendant was precluded from objecting for the first time on appeal that the trial court charged down to a crime which was not a lesser included offense of that for which he was indicted (*People v Ford,* 62 NY2d 275). The *Ford* case does not deal with the legal insufficiency of the evidence to support a conviction of the alternative offense, the issue actually presented here. Nevertheless, another line of precedent supports the same result. The evidence adduced at the trial would have been consistent with a conviction for the attempted murder charge of the indictment. By requesting a charge on attempted aggravated assault upon a peace officer, defendant, in effect, sought and received the benefit of giving the jury the option of exercising leniency by convicting him of a less serious charge. Having received that benefit, he may not now, on appeal, complain that the evidence was technically insufficient to support a conviction of that charge (*People v Holliday,* 74 AD2d 993, 994; *People v Legacy,* 4 AD2d 453, 455). For that reason, his conviction with respect to that offense should stand.